UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| MARCO RAMIREZ,<br><br>        Plaintiff,<br><br>   vs.<br><br>WINTER BLUES, INC., *in personam*;<br>THE F/V WINTER BLUES, OFFICIAL<br>NO. 612146, HER ENGINES,<br>MACHINERY, APPURTENANCES AND<br>CARGO, *in rem*,<br><br>        Defendant. | No. 3:20-cv-00002-SLG-DMS<br><br>**REPORT AND RECOMMENDATION[1] TO DENY DEFENDANT'S MOTION TO TERMINATE MAINTENANCE [Dkt. 39]** |

## I. INTRODUCTION

Defendant Winter Blues, Inc. requests an order terminating its obligation to pay maintenance to Plaintiff Marco Ramirez stemming from an alleged knee injury Ramirez suffered while in the service of fishing vessel Winter Blues (Dkt. 39). The defendant asserts that Ramirez has reached maximum medical improvement, and therefore is no longer entitled to maintenance payments from the defendant (Dkt. 39 at 1). To support its motion, the defendant submitted a report from Dr. Scot A. Youngblood regarding his independent medical examination of Ramirez on January 15, 2021 (Def. Ex. 2).

Ramirez responds in opposition, asserting that maximum medical improvement has not been reached (Dkt. 41). To support that assertion, Ramirez submitted a letter from his treating

---

[1] This report and recommendation is being issued as a final report and recommendation. Pursuant to Fed. R. Crim. P. 59(b)(3), any objections will be considered by the District Court Judge who will accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration and recommendations.

*Ramirez v. Winter Blues*
No. 3:20-cv-00002-SLG-DMS
R&R re Mtn to Terminate Maintenance                                                                                         1

physician, Dr. Brent Adcox, dated March 10, 2021 (Pl. Ex. 1), as well as Dr. Adcox's referral order for Ramirez to see a specialist to further evaluate and treat Ramirez's knee pain (Pl. Ex. 2).

## II. STATEMENT OF FACTS

### A. Ramirez's Injury and Maintenance Payments

On or around July 10, 2019, Ramirez allegedly suffered a knee injury while in the service of fishing vessel Winter Blues and was unable to return to work (Dkt. 19-1 at 1). Ramirez filed a claim for seaman's benefits with Bristol Bay Reserve (Dkt. 21 at 1). Bristol Bay Reserve appraised his daily maintenance payment at $53 (Dkt. 21-4). Ramirez brought this action to resolve a dispute in the daily maintenance payment amount to which he was entitled (Dkt. 1 at 3). On September 11, 2020, the District Court adopted the Magistrate Judge's Report and Recommendation, granting partial summary judgement on the per diem rate of maintenance (Dkt. 29 at 1). Ramirez's daily maintenance amount was set at $59.41 by the Court (Dkt. 29 at 2).

### B. Independent Medical Examination of Ramirez by Dr. Youngblood

The Court ordered Ramirez to submit to an independent medical examination (IME) pursuant to Federal Rule of Civil Procedure 35 in Anchorage, Alaska no later than February 15, 2021 (Dkt. 38). The IME was conducted on January 15, 2021 by Dr. Youngblood (Def. Ex. 2). Dr. Youngblood's diagnoses were as follows:

1. Right knee sprain, without evidence of fracture, dislocation, internal derangement, related to the industrial injury of July 10, 2019, long ago resolved and medically stable.
2. Right knee anterior medical contusion, with bone bruising noted on the MRI of February 6, 2020, clearly postdating and not related to the industrial injury of July 10, 2019, resolved and medically stable.
3. Subject complaints in excess of objective findings.

(Def. Ex. 2 at 13). Dr. Youngblood reported that Ramirez had reached maximum medical improvement for the knee injury resulting from the vessel incident on July 10, 2019, stating further that "[o]ne would have expected that the initial right knee sprain would have resolved some six weeks after the injury, on August 24, 2019" (Def. Ex. 2 at 13). He reported that "no additional treatment is indicated, recommended, reasonable, or necessary" for the injury (Def. Ex. 2 at 14).

### C. Diagnoses from Ramirez's Treating Physician Dr. Adcox

Since at least August 19, 2019, Ramirez has received evaluation and treatment of his knee injury by Dr. Adcox (Def. Ex. 2 at 3). A MRI of Ramirez's right knee was conducted on June 24, 2020 and on June 25, 2020, Dr. Adcox noted there was "no evidence of meniscus tear [or] ligamentous injury to the MCL, LCL, ACL or PCL," however there was swelling, and it was tender (Def. Ex. 1 at 2). Dr. Adcox noted that Ramirez "would be best served by not fishing this season," adding that "if he takes this year off, allows the knee to rest, he has the potential to continue his career as a crab fisherman next summer"[2] (Def. Ex. 1 at 2).

On March 10, 2021, Dr. Adcox sent a letter to plaintiff's counsel stating, "I anticipate that Mr. Ramirez's knee injury will improve with continued antiinflammatories and physical therapy" (Pl. Ex. 1). On March 8, 2021, Dr. Adcox provided Ramirez with a referral order to see a specialist for further evaluation and treatment of his knee pain (Pl. Ex. 2). Plaintiff's counsel provided a declaration to the Court, stating that Ramirez "recently obtained a second medical opinion in Kenai, AK. As of this declaration, I have not yet received the records from that appointment" (Pl. Ex. 3).

---

[2] It is unclear from the information before the Court whether the treating physician meant Ramirez needed only to sit out the 2020 summer fishing season or wait a full twelve months before returning to work.

*Ramirez v. Winter Blues*
No. 3:20-cv-00002-SLG-DMS
R&R re Mtn to Terminate Maintenance 3

## III. APPLICABLE LAW

Seamen injured in the course of their employment are entitled maintenance and cure benefits. *Calmar S. S. Corp. v. Taylor*, 303 U.S. 525, 527-28 (1938). "Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962).

Courts have disagreed as to whether a summary judgment standard or "unequivocal evidence" standard applies to pretrial motions to terminate maintenance; the Ninth Circuit recently recognized this discrepancy among lower courts but declined to decide which standard is correct. *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 538 n.17 (9th Cir 2018).

In the District of Alaska, courts have applied an unequivocal evidence standard. *See Conger v. K & D Fisheries et al.*, No. 3:17-cv-00231-SLG, Dkt. 46 at 3 (D. Ak. May 22, 2018) (the court applied an unequivocal evidence standard to resolve a pretrial motion to terminate maintenance, stating "[b]ecause an intervening case from the Ninth Circuit, *Barnes v. Sea Hawaii Rafting, LLC*, expressly declined to direct otherwise, the Court again applies the equivocation standard to the instant case").

Therefore, in order to succeed on a pretrial motion to terminate maintenance, the movant must demonstrate there is unequivocal evidence that maximum medical improvement has been reached. *Id.* The decision to terminate payments for maintenance and cure "must be unequivocal" and should "consider all available medical evaluations whether the claimant is fit for duty." *Sefcik v. Ocean Pride Alaska, Inc.*, 844 F. Supp. 1372, 1373 (D. Alaska 1993) (citing

*Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir. 1990)). "When there are ambiguities or doubts as to a seaman's right to receive maintenance and cure, they are resolved in favor of the seaman." *Gorum v. Ensco Offshore Co.*, No. CIV.A. 02-2030, 2002 WL 31528460, at *6 (E.D. La. Nov. 14, 2002), *aff'd as amended,* 80 F. App'x 353 (5th Cir. 2003) (citing *Vaughan*, 369 U.S. at 532). "Where conflicting medical opinions exist, a shipowner will likely not meet the unequivocal evidence standard." *Davis v. Brunsman*, No. 3:19-CV-01221-AC, 2021 WL 291451, at *9 (D. Or. Jan. 28, 2021).

## IV. <u>DISCUSSION</u>

Although the defendant supplies the Court with a comprehensive report from Mr. Youngblood indicating that maximum medical cure had been reached, Ramirez's treating physician, Dr. Adcox, stated on March 10, 2021 that Ramirez's injured knee would further recover with medication and physical therapy, therefore opining that maximum medical improvement had not been reached. Given the conflicting determinations of Dr. Youngblood and Dr. Adcox, the defendant fails to meet the unequivocal evidence standard for pretrial termination of maintenance. *See Conger*, No 3:17-cv-00231-SLG, Dkt. 46 at 5; *Gorum*, 2002 WL 31528460, at *6.

The Court notes that the defendant can move for an expedited trial on the maintenance claim pursuant to Federal Rule of Civil Procedure 42(b), at which time each party could present evidence as to whether Ramirez has reached maximum medical cure. *See Conger*, No 3:17-cv-00231-SLG, Dkt. 46 at 5 (citing *Barnes*, 889 F.3d at 539 (recognizing that a district court may "sever the issue of maintenance and hold an expedited trial on that claim under Federal Rule of Civil Procedure 42(b)"); *Dean v. Fishing Co. of Alaska*, 177 Wash. 2d 399, 415 (2013) ("[I]f the

shipowner wishes to terminate paying maintenance and cure, the shipowner could move for an expedited trial under CR 42(b). At an expedited trial, the shipowner would have the burden to prove, by a preponderance of the evidence, that the seaman has reached maximum cure")).

## V. CONCLUSION

For the foregoing reasons, the Court recommends that the District Court DENY the Motion to Terminate Maintenance at docket 39 and direct the defendant to continue maintenance payments until the issue is resolved at trial or by further order of the Court.

DATED this 18th day of March, 2021 at Anchorage, Alaska.

*/s/Deborah M. Smith*
CHIEF U.S. MAGISTRATE JUDGE